(No. 32707.

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* LYDIA M. KIRKENDALL *et al.,* Appellees.

*Opinion filed May 20, 1953.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellant.

John J. Black, and August B. Black, both of Morris, for appellees.

Mr. Justice Bristow delivered the opinion of the court:

The Department of Public Works and Buildings appeals directly to this court from a judgment of the circuit court of Grundy County awarding compensation to the defendants for land and access rights taken in the improvement of U.S. Route 66 as a freeway under the Illinois Freeways Act.

The appeal is made directly to this court because a freehold interest and public revenue are involved.

The pleadings consist of the petition in condemnation; defendants' answer with a copy of a certain lease attached; petitioner's motion to strike the answer, the lease, and that part of the answer referring to the lease; petitioner's motion that compensation for the land taken be ascertained by a jury; defendants' cross petition, and petitioner's motion for a new trial. Petitioner's motions to strike the answer and the lease, and for ascertainment of compensation by a jury and for a new trial were all denied.

The State produced four witnesses, and the State's testimony as to value of the tract in question was as to fair cash market value not taking into consideration the lease in issue. Defendants' witnesses as to the fair market value of the premises considered a lease from the Shell Oil Company which had been negotiated by the defendants in good faith for a considerable period of time and entered into a short time prior to the filing of the petition in condemnation. The evidence clearly shows that the property in question had been considered for, purchased for, leased for, plans prepared for, and the property cleared for a gas station, truck stop and restaurant, all in good faith prior to the commencement of the proceeding. Petitioner's proof placed the value of the land before taking at between $5000 and $6000, without taking into consideration the Shell Oil Company lease. Defendants' proof showed the value of all the premises, with the lease taken into consideration, between $14,000 and $18,000. The trial court, after hearing the evidence without a jury and after a personal view of the premises awarded damages for land taken in the amount of $1400, for access rights taken $2400, and for damages to land not taken $7000.

The appeal presents two issues to this court for determination, *viz.*:

1. Does the State of Illinois in proceedings to condemn property for public use by the State have a right to a trial by jury under the Illinois constitution of 1870 and the Illinois Eminent Domain Act? Ill. Rev. Stat. 1951, chap. 47, par. 1 *et seq.*

2. Was the Shell Oil Co. lease properly admissible in evidence as material to the valuation of the property interest involved?

The question whether there is a right to trial by jury in condemnation proceedings where the compensation is to be paid by the State of Illinois presents a question of first impression never directly decided by this court. Section 13 of article II of the constitution of 1870 provides in part as follows: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the state, shall be ascertained by a jury, as shall be prescribed by law." Section 1 of the Eminent Domain Act (Ill. Rev. Stat. 1951, chap. 47, par. 1,) provides substantially the same as the foregoing constitutional provision with slightly varying language, as follows: "Private property shall not be taken or damaged for public use without just compensation; and that in all cases in which compensation is not made by the state in its corporate capacity, such compensation shall be ascertained by a jury, as hereinafter prescribed." Such statutory provision in the Eminent Domain Act has been the law of the State of Illinois since the approval on April 10, 1872, of "An act to provide for the exercise of the right of eminent domain."

"Eminent domain" is a phrase which has been used for hundreds of years to designate the power and right of the sovereign State, or those to whom its power has been delegated, to take private property within its jurisdiction for public use without the owner's consent, upon paying due compensation. *Western Union Telegraph Co.* v.

*Louisville and Nashville Railroad Co.* 270 Ill. 399; *Litch-field and Madison Railway Co.* v. *Alton and Southern Railroad,* 305 Ill. 388; *Limits Industrial Railroad Co.* v. *American Spiral Pipe Works,* 321 Ill. 101.

The power and right of eminent domain is inherent in the sovereign State, existing independently of written constitutions or statutory laws thereof, regulated by appropriate legislation, limited only by the constitutional provision for compensation, and extending to every kind of property. *South Park Comrs.* v. *Montgomery Ward & Co.* 248 Ill. 299; *Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad Co.* 305 Ill. 388.

Both the constitutions of 1818 and of 1848 provided: "Nor shall any man's property be taken or applied to public use without the consent of his representatives in the general assembly, nor without just compensation being made to him." Const. of 1818, article VIII, sec. 11; Const. of 1848, article XIII, sec. 11.

In *People* v. *Stuart,* 97 Ill. 123, which involved the effect of an act of 1877, providing for the mode of making payment of condemnation, on the liability of certain individuals on a bond given to provide or pay for additional State House grounds, in a concurring opinion by the then Chief Justice, it was noted that the constitution requires the assessment of compensation by a jury in all condemnation proceedings except where compensation was to be paid by the State and that the act in question providing for payment of compensation for land taken was void as being in excess of legislative powers and that therefore, under the terms of the bond in question, the compensation was to be paid by the individual obligors thereon. The Chief Justice then concluded: "They are not the State. The State had no interest in the question of the amount of compensation. The owners of the land and these obligors *alone* were interested in that question. They had in such case a right to have the amount determined *by jury.* That

right is given to the party making compensation as well as to the land owner. Until the amount was determined in a manner effective under our constitution these obligors were not bound by this bond to pay." Thus, by this case and other later cases, it has been clearly established that, where the State is not one of the parties in interest, both parties to a condemnation suit have a right to have the amount of compensation determined by a jury.

However, in *Johnson v. Joliet and Chicago Railroad Co.* 23 Ill. 124, which arose under our earlier constitution, the question was raised whether the right to a trial by jury was guaranteed in eminent domain proceedings by the constitutional provision declaring that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy." In denying this contention the court stated, at page 130, "This has reference only, and is so understood by all jurists, to suits or actions for the recovery of money in actions *ex contractu* or *ex delicto*. It never has been considered by any court, as extending to the process in the exercise of the right of eminent domain, nor in cases of that description, nor in cases in chancery, and other cases which might be mentioned. * * * Nor do we see any conflict between that section and the eighth section, article thirteen of our constitution, which declares 'that no freeman shall be imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.' This clause does not apply, and has never been made to apply, to cases of this description. This is a case clearly within the eleventh section of article thirteen which we have cited and commented on. It is a proceeding in the exercise of the right of eminent domain by the State, to advance the public necessity, and supply a want. We have no doubt the legislature, in the exercise of this right, can, without notice of any kind, on

an emergency of which they are to judge, take any man's property for public use, by making compensation, and prescribe the mode by which this compensation shall be ascertained."

In *Wabash Railroad Co.* v. *Coon Run Drainage and Levee Dist.* 194 Ill. 310, this court held unconstitutional a certain provision of the Levee Act of 1879 which provided a method for determining compensation in a drainage condemnation case not in keeping with the principle of jury determination. After holding that the provisions of section 13 of article II of our constitution and of section 14 of article XI of the constitution guaranteeing that the right of trial by jury shall be inviolate in all trials for claims of compensation in the exercise of the right of eminent domain by a corporation, it was noted that the proceedings for the condemnation of property are *judicial* in character.

In view of the foregoing decisions, it must be concluded that the right to a jury trial where the sovereign State exercises its right of eminent domain is not guaranteed as a matter of common law, nor by the Bill of Rights of the Illinois constitution. This conclusion is supported by the statement contained in Lewis, Eminent Domain, 3rd edition, volume 2, sec. 509, page 922, where it is stated, "In the absence of any express provision on the subject, the authorities almost uniformly hold that it is not a matter of constitutional right. The line of reasoning upon which these decisions are founded is that, before any of our constitutions were adopted, it had been the practice in America and England to ascertain the compensation to be paid for property taken for public use by other agencies than a common-law jury; that this practice was well known to the framers of those constitutions, and that presumably they did not intend by any general language employed to abrogate a practice so universal and of such long standing and against which no complaint existed."

Likewise, in 18 Am. Jur. "Eminent Domain," sec. 337, page 979, it is stated as follows: "Trial by jury in eminent domain proceedings is not essential to due process of law. A State may authorize any just and reasonable method of determining the amount of compensation for land taken for the public use without violating the 14th amendment or similar provisions of the State constitutions. Most of the State constitutions contain some specific provision in regard to trial by jury, but none of them require jury trial in all justiciable controversies that may arise. The usual requirement is that the right to jury trial shall remain 'inviolate,' or the idea is expressed in some other phrasing that no law shall be enacted cutting off trial by jury in such cases as it was customary to employ it when the constitution was adopted. As it has always been customary in almost every State to have the damages in eminent domain cases determined by three or more appraisers or commissioners without the intervention of a jury at any stage of the proceeding, it is held in such States that there is no constitutional right to jury trial in eminent domain cases."

Inasmuch as there was no common-law right to trial by jury in eminent domain proceedings guaranteed and preserved by the Illinois constitution, and inasmuch as section 13 of article II of the constitution excepts those cases where eminent domain compensation is made by the State from the requirement that eminent domain compensation be ascertained by a jury, we must conclude that the Illinois constitution does not require a jury trial where the State is the condemning agency.

There being no constitutional limitation in such instances, the General Assembly of the State has the power and right to specify such method of determining compensation in eminent domain cases where the State is the condemning party as it deems proper and reasonable, subject only to the limitation that it shall enact no special law

where a general law could be made applicable. However, an examination of the acts of the General Assembly in reference to eminent domain discloses no provision by the General Assembly providing for the method of determining compensation where property is taken or damaged by the State, the only statutory requirement applicable to a taking by the State being that the petition in condemnation shall be signed by the Governor or such other person as he shall direct or as shall be provided by law. Ill. Rev. Stat. 1951, chap. 47, par. 2.

The only variance from the language of the constitution found in section 1 of the Eminent Domain Act, (Ill. Rev. Stat. 1951, chap. 47, par. 1,) in exempting those condemnation cases where compensation is made by the State from the requirement for jury trial, is found in the language specifying that cases in which compensation is made by the State "in its corporate capacity" shall not be included. This act of the General Assembly was adopted within two years after the adoption of the constitution of 1870 and has remained in the same form from then to the present date. From what has been heretofore noted as to the nature of the State's power and right of eminent domain and earlier methods of determining the compensation to be paid for the taking of property and the exercise of such power, it is apparent that the clause "in its corporate capacity" was used by the General Assembly to designate those cases in which the State itself, in its sovereign capacity as a State, is the condemning party, as distinguished from those cases in which the condemning party is a subordinate governmental unit or other agency to which the State has delegated its sovereign power and right of eminent domain.

The General Assembly not having chosen to prescribe by general law a method for determination of compensation to be paid where private property is to be taken by the State itself in the exercise of its power of eminent domain, the determination of just compensation for such

taking becomes a judicial proceeding to be regulated by the court in the exercise of its judicial discretion. In the instant case a duly constituted judicial tribunal having heard the sworn testimony and evidence of all interested parties, and having viewed the premises itself, we cannot find any abuse of judicial discretion in denying a trial by jury, no trial by jury being guaranteed at common law or by our constitution, nor required by statutory enactment.

By such conclusion we do not hold nor infer that a jury trial in such instances is prohibited by our constitution or statutory enactments, but do hold that unless and until the General Assembly acts upon the subject, the granting or withholding of a jury trial in condemnation proceedings where the State is the condemning party, as distinguished from a petitioner to whom the power of eminent domain has been delegated by the State, is within the sound judicial discretion of the court, and it is not for this court to legislate judicially upon the subject.

It being elementary and fundamental that in condemnation proceedings the land taken is to be valued at its highest and best use as shown by the evidence, and as rental value of property is clearly an important question to be considered in determining the fair cash market value of property, it is our opinion that the lease of the property here in question with Shell Oil Company, which was negotiated and executed in good faith prior to commencement of the condemnation proceedings in question, was properly admitted in evidence. *City of Chicago* v. *Lord,* 276 Ill. 544; *Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11; *Department of Public Works and Buildings* v. *Diggins,* 374 Ill. 11; *City of Chicago* v. *Witt,* 289 Ill. 520; *Southwest Chicago Drainage Dist.* v. *McMahon,* 329 Ill. 478.

For the reasons heretofore discussed, the judgment of the trial court is affirmed. *Judgment affirmed.*